UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CHARLES JONES, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 13-1691 (RMC) |
| NATIONAL COUNCIL ON DISABILITY, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

**OPINION**

Charles Jones is retired, and his wife, Sylvia Jones, is employed as a Director of Administration for the National Council on Disability (NCD), a federal agency. Mr. Jones, an African American, alleges that when he visited NCD to take his wife to brunch he was questioned by the Federal Protective Service based on illegal "racial profiling." As a result of this incident, Mr. Jones sues NCD and certain of its employees for violations of his constitutional rights, discrimination, and various torts. Defendants move to dismiss. As explained below, their motion will be granted.

**I. FACTS**

On September 30, 2013, Mr. Jones visited the NCD office in Washington, D.C., to take his wife to brunch. He arrived around 9:00 a.m. and waited in his wife's office while she worked.[1] In the meantime, NCD employee Anne Sommers telephoned NCD Executive Director Rebecca Cokley to report that an unknown man was in Mrs. Jones' office. Ms. Cokley was at

---

[1] The facts set forth here are those alleged in the Amended Complaint, *see* Am. Compl. [Dkt. 6], with the single addition of the time of Mr. Jones' arrival at NCD, which is supplied in his Response brief, *see* Pl. Resp. [Dkt. 10] at 6.

1

home on maternity leave. She phoned Mrs. Jones and inquired about the identity of the man in her office. Mrs. Jones, who took the call by speaker phone, indicated that it was her husband. Ms. Cokley seemed angry and she asked what Mrs. Jones was working on. After recounting her current projects, Mrs. Jones asked whether Ms. Cokley was questioning all NCD directors or just her. Ms. Cokley "abruptly slammed the phone" down. Am. Compl. at 4.

Mr. and Mrs. Jones left for brunch at 12:20. When they returned, Mr. Jones again sat in Mrs. Jones' office. Mrs. Jones has a disability that causes bleeding and migraines and that is exacerbated by stress; Mr. Jones wanted to observe her medical condition for a time because the phone call from Ms. Cokley had been stressful. At 2:30 p.m. when Mr. Jones was about to leave, NCD Chair Jeffrey Rosen and two Federal Protective Service (FPS) officers arrived to investigate Ms. Cokley's complaint that Mr. Jones was in Mrs. Jones' office and he was engaging in "suspicious activity." *Id*. at 5-6. Mr. Jones alleges that he was "placed . . . in a custodial situation" while being questioned by the officers. *Id*. at 5. Mr. Jones was permitted to remain, and the officers and Mr. Rosen left; Mr. Jones left soon thereafter.

Mr. Jones wrote to NCD on September 30 and October 21, 2013 to complain that he was discriminated against, intimidated, and publicly humiliated. *Id*. at 6-8. NCD "through Rebecca Cokley denied the plaintiff's assertions on October 25, 2013." *Id*. at 8.

Mr. Jones, proceeding *pro se*, filed his initial complaint here on October 29, 2013. The Court dismissed the complaint without prejudice as too vague under Federal Rule of Civil Procedure 8. *See* Order (Dec. 19, 2013) [Dkt. 5]. Mr. Jones then filed a more detailed Amended Complaint against NCD, Ms. Sommers, Ms. Cokley, and Mr. Rosen (collectively, Defendants), asserting that "[i]t goes against the civil rights and liberties given to citizens under the

Constitutional amendments to use racial profiling as a tool for investigation." Am. Compl. at 5.

Mr. Jones further alleges:

> The false reports, statements and race-based assumptions made against the plaintiff led to public humiliation violating the plaintiff's rights to privacy which is a natural human right. The defendants[] also defamed the plaintiff's reputation by making false statements in written and oral communications [and by] making fabricated assertions that the plaintiff's mere presence was a threat to the safety of staff, threatened the theft of government property, [and caused] a disruption to NCD business and that plaintiff was moving government furniture, which essentially resulted in law enforcement depriving the plaintiff of his right to freedom of movement.

*Id*. at 7. The Amended Complaint asserts the following causes of action:

> (1) race discrimination in violation of the Civil Rights Act of 1964;
>
> (2) violation of due process under the Fifth Amendment;
>
> (3) violation of equal protection under the Fifth Amendment;
>
> (4) defamation;
>
> (4) intentional infliction of emotional distress;
>
> (5) negligent infliction of emotional distress; and
>
> (6) false statements under 18 U.S.C. § 1001.

*See id*. at 2, 6, 7.

Defendants move to dismiss, and Mr. Jones opposes. The Federal Government filed a certification, pursuant to 28 U.S.C. § 2679(d), certifying that Ms. Sommers, Ms. Cokley, and Mr. Rosen were acting within the scope of their employment as employees of NCD at the time of the incident and substituting the United States as the defendant in this case.[2]

---

[2] *See* Defs. Mot. to Dismiss [Dkt. 8], Ex. A (Certification) [Dkt. 8-4].

## II. STANDARD OF REVIEW

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Although pro se complaints are construed liberally, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972); *United States v. Byfield*, 391 F.3d 277, 281 (D.C. Cir. 2004), this Court must have jurisdiction over a claim in order to rule on it. NCD moves to dismiss for lack of jurisdiction, claiming sovereign immunity.

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a complaint for lack of subject matter jurisdiction. No action of the parties can confer subject matter jurisdiction on a federal court because subject matter jurisdiction is both a statutory requirement and an Article III requirement. *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003). The party claiming subject matter jurisdiction bears the burden of demonstrating that such jurisdiction exists. *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008). When reviewing a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), a court reviews the complaint liberally, granting the plaintiff the benefit of all inferences that can be derived from the facts alleged. *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004). Nevertheless, "the Court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiffs' legal conclusions." *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006). A court may consider materials outside the pleadings to determine its jurisdiction. *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005).

### B. Motion to Dismiss Under Rule 12(b)(6)

Defendants collectively seek dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). A complaint must be sufficient "to give a defendant fair notice

of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Although a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. The facts alleged "must be enough to raise a right to relief above the speculative level." *Id*. "[A] complaint needs *some* information about the circumstances giving rise to the claims." *Aktieselskabet Af 21. Nov. 2001 v. Fame Jeans, Inc.*, 525 F.3d 8, 16 n.4 (D.C. Cir. 2008) (emphasis in original). A complaint must contain sufficient factual matter to state a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 570. When a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, then the claim has facial plausibility. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. A court must treat the complaint's factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555. But a court need not accept as true legal conclusions set forth in a complaint. *Iqbal*, 556 U.S. at 678.

In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007) (internal quotation marks and citation omitted). Generally, when a court relies upon matters outside the pleadings, a motion to dismiss must be treated as one for summary judgment and disposed of pursuant to Rule 56. *See* Fed. R. Civ. P. 12(d). "However, where a document is referred to in the complaint and is central to the plaintiff's

claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment." *Nat'l Shopmen Pension Fund v. Disa*, 583 F. Supp. 2d 95, 99 (D.D.C. 2008) (citation omitted).

## III. ANALYSIS

### A. Discrimination in violation of the Civil Rights Act of 1964

Mr. Jones claims that Defendants discriminated against him on the basis of his race in violation of the Civil Rights Act of 1964, Pub. L. 88-352, 78 Stat. 241 (1964). That Act includes nine titles, which prohibit race and status-based discrimination in various contexts. Title I bars the unequal application of voter registration requirements; Title II bans discrimination in hotels, restaurants and other public accommodations; Title III prohibits discriminatory access to public facilities; Title IV relates to school desegregation; Title V expands the Civil Rights Commission; Title VI prohibits discrimination in federally assisted programs; Title VII prohibits discrimination in employment; Title VIII requires compilation of voter data; Title IX makes civil rights cases reviewable in federal courts and authorizes the Attorney General to intervene;[3] Title X establishes the Community Relations Service for the purpose of assisting local claims of discrimination; and Title XI provides the right to a jury trial for persons accused of contempt of the Act. *See generally* Major Features of the Civil Rights Act of 1964, www.congresslink.org/print_basics_histmats_civilrights64text.htm (last visited Sept. 3, 2014).

Mr. Jones' Civil Rights Act claim is vague. He does not allege a violation of any particular Title of the Act. Further, Titles I through XI do not apply to the facts that Mr. Jones

---

[3] Title IX of the Civil Rights Act of 1964 should not be confused with Title IX of the Education Amendments Act of 1972, Pub. L. No. 92-318, 86 Stat. 235 (June 23, 1972), codified at 20 U.S.C. §§ 1681 *et seq*., which prohibits gender discrimination in federally funded education programs and activities such as school sports.

6

alleges. Thus, the allegation that Defendants violated the Civil Rights Act of 1964 will be dismissed for failure to state a claim under Rule 12(b)(6).

### B. Sovereign Immunity

Mr. Jones cannot maintain the constitutional or tort claims against NCD and its employees, in their official capacities, under the doctrine of sovereign immunity. Pursuant to that doctrine, the United States cannot be sued without the federal government's express consent. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *United States v. Mitchell*, 463 U.S. 206, 212 (1983). "The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress." *Block v. North Dakota,* 461 U.S. 273, 287 (1983). Sovereign immunity also applies to federal agencies and employees acting in their official capacities. *See Albrecht v. Comm. on Employee Benefits of Fed. Reserve Employee Benefits Sys.*, 357 F.3d 62, 67 (D.C. Cir. 2004) (federal agencies and instrumentalities possess sovereign immunity); *Clark v. Library of Congress*, 750 F.2d 89, 102-04 (D.C. Cir. 1984) (federal employees, acting in their official capacity, are protected from suit by sovereign immunity). Claims brought against the United States, its agencies, or employees, when the United States has not waived sovereign immunity for that claim, must be dismissed for lack of subject matter jurisdiction. *Sloan v. Dep't of Hous. and Urban Dev.*, 236 F.3d 756, 759 (D.C. Cir. 2001); *see also Jackson v. Bush,* 448 F. Supp. 2d 198, 200 (D.D.C. 2006).

There is no waiver of sovereign immunity for constitutional claims. However, the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671 *et seq*., provides a limited, express waiver of sovereign immunity for certain tort claims by providing a remedy against the United States for the negligent or wrongful act or omission of any federal employee while acting within the scope of his office or employment. *See* 28 U.S.C. § 1346(b); *see also id*. § 2674 (the United

States shall be liable in the same manner and to the same extent as a private individual under like circumstances). A waiver of sovereign immunity, such as the FTCA, is strictly construed and any doubt or ambiguity is resolved in favor of immunity. *See Lane v. Pena,* 518 U.S. 187, 192 (1996).

Unfortunately for Mr. Jones, the FTCA does not provide a waiver of sovereign immunity for the torts he alleges—defamation and intentional and negligent infliction of emotional distress caused by defamation. The FTCA does not cover claims "arising out of" libel or slander, *see* 28 U.S.C. § 2680(h),[4] and the D.C. Circuit has held that claims "arising out of" libel or slander include defamation claims, *see Kugel v. United States*, 947 F.2d 1504, 1506-07 (D.C. Cir. 1991). Thus, defamation claims against the United States are barred by sovereign immunity because the FTCA does not waive immunity for claims "arising out of" libel or slander. *Id.* Further, claims of intentional and negligent infliction of emotional distress that "arise out of" a claim for slander also are not included in the FTCA's waiver of immunity. *See Thomas-Lazear v. FBI*, 851 F.2d 1202, 1207 (9th Cir. 1988).

With regard to Mr. Jones' claims of defamation and related emotional distress, there is no specific waiver of sovereign immunity that applies. With regard to Mr. Jones' constitutional claims against NCD and its employees in their official capacities, there is no waiver of sovereign immunity. These claims must be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).

---

[4] The FTCA does not apply to "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights . . . ." 28 U.S.C. § 2680(h).

To the extent that Mr. Jones intends to assert claims of intentional and negligent infliction of emotional distress that do not arise from his claim for defamation, such inchoate claims are barred by his failure to exhaust administrative remedies. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) (holding that an FTCA litigant must exhaust administrative remedies before filing suit in federal court); *see also* 28 U.S.C. § 2675(a) ("[a]n action shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented the claim to the appropriate Federal agency"). The administrative filing requirement "is a jurisdictional prerequisite to the maintenance of a tort suit against the United States." *GAF Corp. v. United States*, 818 F.2d 901, 904 (D.C. Cir. 1987). "[A] jurisdictionally adequate presentment is one which provides to the appropriate agency (1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum-certain damages claim." *Id*. at 905.

This did not happen. Mr. Jones alleges that he sent administrative complaints to NCD on September 30 and October 21, 2013, but he admits that he did not include a sum-certain statement of damages: "At that time the plaintiff was not seeking monetary damages, only an investigation and corrective action." *See* Pl. Resp. [Dkt. 10] at 5. Mr. Jones has not exhausted administrative remedies with the required specificity for his claims of intentional and negligent infliction of emotional distress, and those claims must be dismissed for lack of jurisdiction.

### C. Fifth Amendment Claims

Mr. Jones also seeks to hold Ms. Sommers, Ms. Cokley, and Mr. Rosen liable in their individual capacities for violating his Fifth Amendment rights to due process and equal

protection.[5] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), allows an individual to sue a federal officer, in his individual capacity, for money damages for the violation of a clearly established constitutional right. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001).

1. **Due Process**

The Fifth Amendment protects individuals from deprivation of "life, liberty, or property, without due process of law" and is intended to secure individuals from arbitrary exercises of government power. *Daniel v. Williams*, 474 U.S. 327, 330 (1986). To state a substantive due process claim, a plaintiff must assert that a government official was so "deliberately indifferent" to his constitutional rights that the official's conduct "shocks the conscience," *see Estate of Phillips v. District of Columbia*, 455 F.3d 397, 403 (D.C. Cir. 2006), or that the government conduct was "so egregious [or] so outrageous, that it may fairly be said to shock the contemporary conscience"), *see Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998).[6]

---

[5] The Fifth Amendment provides in pertinent part that no person "shall be deprived of life, liberty, or property without due process of law," *see* U.S. Const. amend. V, and the Fourteenth Amendment similarly provides that "no State shall . . . deprive any person of life, liberty, or property without due process of law," *see* U.S. Const. amend. XIV. Because the District of Columbia is a federal enclave, it is subject to the Fifth Amendment and not the Fourteenth, which applies to the States. *Propert v. District of Columbia*, 948 F.2d 1327, 1330 n.5 (D.C. Cir. 1991) (citing *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954)). The ultimate legal analysis is the same, and cases analyzing the States' liability under the Due Process clause of the Fourteenth Amendment are regularly cited in the analysis of a federal actor's liability under the Due Process clause of the Fifth Amendment. *See Piechowicz v. United States*, 885 F.2d 1207, 1214 n.9 (4th Cir. 1989).

[6] Mr. Jones asserts a substantive due process claim and not a procedural due process claim, as he does not allege that he was deprived of life, liberty, or property without notice or opportunity to be heard.

The Amended Complaint does not allege conduct by any individual Defendant that was so deliberatively indifferent, egregious, or outrageous as to be conscience-shocking. Mr. Jones alleges that when he visited his wife at her office at 9:00 a.m. on September 30, 2013, Ms. Sommers called Ms. Cokley to report an "unknown man" in Mrs. Jones' office. Mr. Jones further alleges that Ms. Cokley called Mrs. Jones to ask who was there and what she was doing and, despite Mrs. Jones' assurance that her husband was visiting while she worked, Ms. Cokley contacted FPS and reported that Mr. Jones was engaging in suspicious behavior. Mr. Jones also asserts that when he and his wife returned from brunch in the early afternoon, Mr. Rosen and the FPS officers came to investigate. They spoke to Mr. Jones and allowed him to remain. The conduct of Ms. Sommers, Ms. Cokley, and Mr. Rosen, considered both separately and together, was not so egregious, outrageous, or deliberately indifferent to Mr. Jones' constitutional rights that it shocks the conscience. Mr. Jones' due process claim must be dismissed under Rule 12(b)(6).

### 2. Equal Protection

The Fifth Amendment Due Process Clause also encompasses equal protection claims. *See Bolling v. Sharpe*, 347 U.S. 497, 499-500 (1954)). To advance an equal protection claim, a plaintiff must assert facts that support the allegation that the government intentionally treated him differently from others who were similarly situated and that there is no rational basis for the difference in treatment. *3883 Conn. LLC v. District of Columbia*, 336 F.3d 1068, 1075 (D.C. Cir. 2003) (citing *Village of Willowbrook v. Olech*, 529 U.S. 562, 564 (2000)). Equal protection "does not require that all persons everywhere be treated alike. Instead, it imposes the rather more modest requirement that government not treat similarly situated individuals differently without a rational basis." *Noble v. U.S. Parole Comm'n*, 194 F.3d 152, 154 (D.C. Cir.

1999) (citing *Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)). "The dissimilar treatment of dissimilarly situated persons does not violate equal protection." *Women Prisoners of District of Columbia Dep't of Corrections v. District of Columbia*, 93 F.3d 910, 924 (D.C. Cir. 1996).

Mr. Jones claims that he was "singled out and treated less favorably than other visitors to the NCD office." Am. Compl. at 7. Specifically, he contends that Gary Blumenthal, a white male who is an NCD Council Member, visited the NCD office on September 11, 2013 and screamed obscenities, but no one called law enforcement. *Id*.; *see also* Pl. Resp. at 8 (Pl. Objections to Defs. Statement of Facts).[7]

Mr. Jones and Mr. Blumenthal were not similarly situated. Mr. Jones was a visitor at NCD, not known by Ms. Sommers, Ms. Cokley, or Mr. Rosen. He arrived at NCD at 9:00 in the morning and remained until 2:30 in the afternoon (with the exception of going out to brunch in the early afternoon). He was not there on business; the purpose of his visit was to take his wife to brunch. In contrast, Mr. Blumenthal was employed by NCD as a Council Member; he was known to others in the office; and he had business at the office. Mr. Jones' assertion that his equal protection rights have been violated is a legal conclusion, without supporting facts, that need not be accepted as true. *See Iqbal*, 556 U.S. at 678-79. Mr. Jones' equal protection claim must be dismissed for failure to state a claim.

### D. Vicarious Liability

Mr. Jones also alleges that "FPS law enforcement officers . . . deprived the plaintiff's freedom of movement[,] which placed the plaintiff in a custodial situation." Am.

---

[7] Mr. Jones originally asserted that the incident regarding Mr. Blumenthal occurred on August 11, 2013, but when he discovered that August 11, 2013 was a Sunday, he corrected his allegation and asserted that the incident took place on September 11, 2013. *See* Pl. Resp. at 4.

Compl. at 5. He did not name the FPS officers as defendants here, and *Bivens* does not impose vicarious liability on the named Defendants. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (because vicarious liability is inapplicable to *Bivens* suits, a plaintiff must plead that each official, through his own actions, violated the Constitution).

### E. Claim that Defendants Violated 18 U.S.C. § 1001

Mr. Jones claims that Mr. Rosen and Ms. Cokley violated 18 U.S.C. § 1001 by knowingly and willfully making false statements. Because this is a criminal statute that provides no private right of action, *see Banks v. Kramer*, No. 09-5140, 2009 WL 5526780, at *1 (D.C. Cir. Dec. 30, 2009), this claim will be dismissed.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss [Dkt. 8] will be granted.[8] The Amended Complaint will be dismissed. A memorializing Order accompanies this Opinion.

Date: September 4, 2014

/s/
ROSEMARY M. COLLYER
United States District Judge

---

[8] Because the Court has decided the issues pursuant to the standards set forth in Rules 12(b)(1) and (6), it does not address Defendants' alternative argument that they are entitled to summary judgment.